UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS M.,

Plaintiff,

v.

SSA COMMISSIONER,

Defendant.

Case No. 4:25-cv-02975-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 13, 15

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings, including a new hearing and new decision. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed an application for Title II benefits on July 7, 2021, asserting disability beginning December 5, 2019. (Administrative Record ("AR") 195-206.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 17, 99-103, 105-10.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was held on November 2, 2023, at which Plaintiff and a vocational expert ("VE") testified. (AR 17, 37.)

Following the hearing, the ALJ denied Plaintiff's application on May 7, 2024. (AR 17-30.) A request for review of the ALJ's decision was filed on May 24, 2024. (AR 191-93.) The Appeals Council denied Plaintiff's request for review on February 20, 2025. (AR 1.)

United States District Court
Northern District of California

United States District Court
Northern District of California

On April 1, 2025, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) On September 2, 2025, Plaintiff filed the motion for summary judgment. (Pl.'s Mot., Dkt. No. 13.) On September 30, 2025, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 15.) Plaintiff filed a reply on October 14, 2025. (Pl.'s Reply, Dkt. No. 16.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the

fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

## III. DISCUSSION

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's erred in weighing the medical opinion of consultative examiner Rose Lewis, M.D., and (2) the ALJ erred in determining Plaintiff's RFC.

### A. Medical Opinion

Plaintiff argues that the ALJ erred in evaluating the opinion of examining physician Dr. Rose Lewis. (Pl.'s Mot. at 6-11.)

Under the updated regulations, the SSA "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." 20 C.F.R. § 416.920c(a). Instead, each medical opinion's persuasiveness is evaluated based on various factors, the most important of which are "supportability" (the extent to which the medical opinion is supported by relevant and objective medical evidence) and "consistency" (the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources). *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). Neither supportability nor consistency is controlling; they are considered in relation to each other and to any other factors an ALJ finds relevant. 20 C.F.R. § 404.1520c(b)(2).

While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods,* 32 F.4th at

791. An ALJ, however,

> cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.

*Id.* at 792 (internal quotation omitted).

On July 21, 2022, Plaintiff underwent an internal medicine evaluation by consultative examiner Rose Lewis, M.D. (AR 1686.) Plaintiff reported that he had been diabetic for 6 to 7 years and did not take insulin, and that he experienced numbness and tingling in his feet along with burning and itching at night. (AR 1686.) He had a myocardial infarction in December 2019 at which time 2 stents were placed. *Id.* He endorsed shortness of breath, occasional chest pain, and heavy pressure on his chest, and reported that he tires easily and can walk less than half a block. *Id*. He can only climb 2 or 3 steps on a staircase before becoming fatigued and sometimes lightheaded. *Id*. Plaintiff also has occasional urinary frequency and incontinence. *Id*. Plaintiff reported that he did not do any household chores due to fatigue. *Id*.

Upon examination, Dr. Lewis measured Plaintiff's blood pressure at 131/82. (AR 1687.) Dr. Lewis documented reduced cervical flexion and extension, reduced lumbar flexion with vertigo, and reduced ankle dorsiflexion. *Id.* at 1687-88. Dr. Lewis also noted decreased sensation to pinprick on the bilateral feet to mid calves. *Id.* at 1688. Dr. Lewis diagnosed Plaintiff with diabetes, neuropathy, hypertension, angina, benign prostatic hypertrophy, hypercholesterolemia, vertigo, tinnitus, gastroesophageal reflux disease, and coronary artery disease status post myocardial infarction with 2 stents. *Id.* Based on the examination, Dr. Lewis opined that Plaintiff had the following limitations:

> The claimant can stand and walk up to two hours because of the coronary artery disease status post myocardial infarction with two stents, easy fatigability, vertigo, exertional dyspnea, angina, diabetes, neuropathy, decreased balance and decreased range of motion of the back. The claimant can sit up to six hours. The claimant does not use assistive device. The claimant can lift and carry, pushing and pulling less than 10 pounds occasionally and 10 pounds frequently because of the coronary artery disease status post myocardial infarction with two stents, easy fatigability, vertigo, exertional dyspnea, angina, diabetes, neuropathy, decreased balance and decreased range of motion of the back. The claimant is capable of climbing steps, stairs, ladders, scaffolds and ropes occasionally, balancing occasionally,

> stooping occasionally, kneeling occasionally, crouching occasionally, and crawling occasionally because of the coronary artery disease status post myocardial infarction with two stents, easy fatigability, vertigo, exertional dyspnea, angina, diabetes, neuropathy, decreased balance and decreased range of motion of the back…. The claimant has marked limitations with working at unprotected heights and working around heavy machinery because of the coronary artery disease status post myocardial infarction with two stents, easy fatigability, vertigo, exertional dyspnea, angina, diabetes, neuropathy, decreased balance and decreased range of motion of the back.

(AR 1688-89.) Additionally, Dr. Lewis found that Plaintiff "is capable of reaching over head and forward without limitations, handling without limitations, fingering without limitations, and feeling without limitations." (AR 1689.) She also opined that Plaintiff had no limitations with hearing and speaking, traveling, and working around excessive noise, extremes of temperature, chemicals, dust, fumes and gasses. *Id.* The ALJ found this opinion unpersuasive because it was not supported or consistent with Plaintiff's treatment record. (AR 28-29.)

Here, Plaintiff argues that the ALJ erred in discounting Dr. Lewis's opinion because the ALJ's supportability and consistency analyses were not supported by substantial evidence. (Pl.'s Mot. at 8.)

**i. Supportability**

An ALJ's supportability analysis cannot consist of a mere summary of conditions. Rather, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025) (quoting *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000)). Multiple courts in this circuit, including some in this district, have required that the ALJ draw a logical bridge to enable the reviewing court to meaningfully review the ALJ's findings. *See, e.g., Perry v. Berryhill*, No. 15-CV-04566-DMR, 2017 WL 840382, at *6 (N.D. Cal. Mar. 3, 2017) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)); *Lizer v. Berryhill*, 363 F. Supp. 3d 1097, 1102 (N.D. Cal. 2019) (quoting *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (logical bridge required to afford meaningful review of ALJ's decision); *Teresa P. v. Comm'r of Soc. Sec.*, No. 24-CV-100-AJB-DDL, 2025 WL 326160, at *4 (S.D. Cal. Jan. 29, 2025), *report and recommendation adopted,* No. 24-CV-00100-AJB-DDL, 2025 WL 590373 (S.D. Cal. Feb. 24, 2025) (quoting *Perry,* 2017 WL 840382, at *6); *Gomez v. Bisignano,* No. 1:25-CV-00966-EGC, 2026 WL 2532004, at *6 (E.D. Cal. Aug. 27, 2026) (failure to draw logical

bridge rendered decision not supported by substantial evidence).

Courts must "review [an] ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999)). Thus, the Court cannot consider discussion that the ALJ did not clearly tie to her supportability analysis as evidence in support of her conclusion.

Here, the ALJ's summary of Dr. Lewis's examination preceded any mention of supportability. (AR 28, 29.) While some of Dr. Lewis's test results were reiterated in the ALJ's supportability discussion, the ALJ did not state that the entirety of her earlier summary of Dr. Lewis's examination was intended to serve as evidence of unsupportability. (AR 29.)

In opposition, Defendant appears to argue that the March 2022 follow-up visit is evidence of unsupportability, but Defendant is conflating supportability with consistency. (*See* Def.'s Mot. at 5.) The results of that visit are properly classified as "evidence from other medical sources" and, therefore, pertain to the consistency analysis. 20 C.F.R. § 404.1520c(c). They are irrelevant to supportability, which asks only whether the results of Dr. Lewis's examination support Dr. Lewis's opinion. *Id*. Thus, the ALJ's supportability analysis is limited to the following:

> The opinion is not persuasive because it is not consistent with and supported by the evidence from the evaluation and the treatment record, e.g., during the examination, there were no areas of tenderness, crepitus or effusion and his motor strength was 5/5 and equal in the bilateral upper and lower extremities. Grip strength was 5/5 bilaterally. There was decreased sensation to pinprick on the bilateral feet up to mid-calf. Deep tendon reflexes were 2+ in the bilateral upper and lower extremities and cranial nerves II through XII were intact.

(AR 28-29.) Despite citing these test results as reason to discount Dr. Lewis's opinion, the ALJ offered no analysis of them. In fact, the ALJ's failed to explain *how* the evidence presented demonstrated that Dr. Lewis's opinion was unsupported. For example, there was no explanation as to how "decreased sensation to pinprick on the bilateral feet up to mid-calf" was inconsistent with Dr. Lewis's RFC finding, or even which elements of the RFC were implicated by that inconsistency. (*See* AR 29.) By declining to comment on the implications of the evidence she

United States District Court
Northern District of California

presented, the ALJ failed to establish a logical bridge between Dr.'s Lewis's examination and the ALJ's finding that Dr. Lewis's RFC was unsupported.

Accordingly, the ALJ's finding of unsupportability is not supported by substantial evidence.

**ii. Consistency**

The Court also finds that the ALJ's consistency analysis is fatally flawed. Generally, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). While the ALJ need not analyze the entire medical record, the points of reference must be sufficiently many to adequately characterize the record as a whole. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) ("a court must consider the record *as a whole*, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion.") (quoting *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.1993)) (emphasis added). The use of the plural in referring to "other medical sources and nonmedical sources" suggests that the points of comparison must, at minimum, be multiple. *See* 20 C.F.R. § 404.1520c(c)(2).

Plaintiff contends that the ALJ mischaracterized the record as a whole by utilizing only a single point of comparison in the consistency analysis. (Pl.'s Mot. at 10.) Furthermore, Plaintiff notes, the examination in question was a "a single cardiology consultation" that did not address multiple non-cardiac issues to which "Dr. Lewis attributed Plaintiff's limitations…." (Pl.'s Mot. at 11.)

In opposition, Defendant argues that because the March 2022 follow-up exam was close in time to Dr. Lewis's assessment, it was a reasonable comparison and, therefore, not cherry-picked. (Def.'s Opp'n at 6.) While Defendant is correct that the ALJ's use of the March 2022 follow-up was not improper, this argument does not address the fact that the March 2022 follow-up is the only point of comparison. Additionally, Defendant maintains that the ALJ showed consideration of the record as a whole through her review of Plaintiff's medical history and her discussion of the RFC assessment by Dr. Cynthia Linardos. *Id.* at 6-7. Even so, these arguments are unavailing,

because the ALJ referenced neither in her consistency analysis, and the Court cannot properly consider them. *See Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015) (The court can only consider the reasons asserted by the ALJ.).

Thus, the only reference point clearly used in the ALJ's consistency analysis was the March 2022 follow-up visit, and a single reference point cannot characterize the entire medical record. The Court notes that the medical visit in question was a cardiology follow-up and did not address several of the conditions to which Dr. Lewis attributed her RFC finding. (Pl.'s Mot. at 11; AR1622, 1626-27.) Thus, while the March 2022 examination may be inconsistent with some of Dr. Lewis's findings, it does not definitively show that Dr. Lewis's opinion was inconsistent with the medical record as a whole.

Finally, Defendant argues that "Plaintiff failed to meet his burden of … showing … that any of the medical records [that the ALJ did not address in her consistency analysis] are relevant to the allegedly disabling impact of his lumbar range of motion." (Def.'s Opp'n at 6.) The fact that Plaintiff has the burden of proof in steps one through four of the sequential analysis does not obviate the ALJ's responsibility to conduct a thorough consistency analysis. For the reasons set forth above, the ALJ's consistency analysis was insufficient.

Accordingly, the ALJ erred in finding Dr. Lewis's opinion unpersuasive, because that finding was not supported by substantial evidence.

**B. RFC**

Plaintiff argues that the ALJ's failure to properly evaluate Dr. Lewis's opinion was not harmless, because a proper evaluation would have likely resulted in a sedentary RFC finding. (Pl.'s Mot. at 11.) Plaintiff contends that a sedentary finding would have led to a finding that Plaintiff was disabled. *Id.*

Considering the errors noted above, the Court finds that the ALJ may have also erred in formulating the RFC.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. Because it is not clear

from the record that the ALJ would be required to find Plaintiff disabled if all the evidence was properly evaluated, remand for further proceedings is appropriate. On remand, the ALJ must hold a new hearing and properly evaluate the evidence based on applicable law and consistent with this order.

IT IS SO ORDERED.

Dated: September 23, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California